UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOMETRICS, INCORPORATED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OPTICAL SOLUTIONS, INC., et al.,<br><br>Defendants. | Lead Case No. 18-cv-00417-BLF<br>Case No. 18-cv-03276-BLF<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 139] |
| OPTICAL SOLUTIONS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>NANOMETRICS, INCORPORATED,<br><br>Defendant. | |

This action arises out of a contractual relationship between Nanometrics Incorporated ("Nanometrics"),[1] a manufacturer of semiconductor testing equipment, and Optical Solutions, Inc. ("OSI"), a builder of optical lenses used in semiconductor testing equipment. Each party has an operative complaint in this consolidated action; presently before the Court is Nanometrics's motion for summary judgment (the "Motion") on OSI's Fourth Amended Complaint, which alleges claims for breach of contract and promissory estoppel. Mot. for Summ. J. ("Mot."), ECF No. 139. The Court heard oral argument on the Motion on June 29, 2023. Having considered the briefing and oral argument of the parties, as well as the governing law, the Court DENIES Nanometrics's Motion.

---

[1] Nanometrics is now known as Onto Innovation, Inc. *See* ECF No. 73. To preserve clarity across the record in this action, the Court will continue to refer to the company as Nanometrics.

## I. BACKGROUND

### A. Factual Background

The following facts are undisputed unless otherwise noted. Nanometrics is a company that manufactures and sells equipment used to measure semiconductor wafers. Decl. of Bruce Crawford ("Crawford Decl.") ¶ 4, ECF No. 139-4. Companies such as Samsung, Intel, and Taiwan Semiconductor Manufacturing Company ("TSMC") purchase such measuring equipment to manufacture semiconductor chips of consistent quality. Decl. of Amy Smith ("Smith Decl.") Exh. 12,[2] Expert Report of Julie Bentley, Ph.D. ("Bentley Report") ¶¶ 18–19, ECF No. 139-2. These chip manufacturing companies generally use one model of measuring equipment per generation—usually three to five years—of chip technology; accordingly, Nanometrics and other measuring equipment companies compete to be chosen by chip manufacturers as the equipment provider, which secures multiple years of revenue from that manufacturer. *Id.* ¶ 19.

Optical lenses are a critical component of semiconductor measuring equipment. Decl. of John Leon ("Nanometrics Leon Decl.") ¶ 4, ECF No. 139-5. OSI is an optical lens manufacturer. Decl. of Bradley J. Piccirillo ("Piccirillo Decl.") ¶ 1, ECF No. 141-1. In December 2012, Nanometrics contracted with OSI to manufacture a 40-micron optical lens. Fourth Am. Compl. ("4AC") ¶ 17, ECF No. 92; Answer ¶ 17, ECF No. 108. On June 19, 2013, Nanometrics and OSI discussed Nanometrics's need for a 25-micron lens. Piccirillo Decl. ¶ 3. On July 9, 2013, OSI issued a quote to Nanometrics for 25-micron lenses. 4AC ¶ 25; Answer ¶ 25. On August 1, 2013, Nanometrics issued a purchase order to OSI for 25-micron lenses. Decl. of Matthew R. Johnson ("Johnson Decl.") Exh. G,[3] at 1–3, ECF No. 141-9.

Between August 2 and August 7, 2013, OSI ordered specialized equipment costing over $838,000. Exh. I, at 1–7. OSI claims it placed these orders in reliance upon ongoing negotiations and understandings reached with Nanometrics, *i.e.*, that OSI and Nanometrics would enter into an exclusivity agreement under which OSI would be Nanometrics's exclusive supplier of 40-micron and 25-micron lenses. Exh. E ("Piccirillo Dep. Tr.") 174:4–177:19.

---

[2] All numbered exhibits are attached to the Smith Declaration, ECF No. 139-1.
[3] All lettered exhibits are attached to the Johnson Declaration, ECF No. 141-2.

On August 7, 2013, Nanometrics issued a revised purchase order to OSI for 25-micron lenses. Exh. 17, at 4–6; Exh. G, at 4–9. The purchase order provided for a due date of December 10, 2013. *Id.* On September 9, 2013, the parties executed an agreement (the "Agreement") titled "Addendum to Purchase Agreement," which OSI describes as the "Exclusivity Agreement." Exh. 41; Exh. M. The Addendum amends the 40-micron and revised 25-micron purchase orders issued by Nanometrics. *Id.* It provides:

> If, on or before the date of completion established in the design specification, which date may be amended by mutual agreement, OSI is able to produce small spot lenses which meets [sic] the specifications and commercial product performance specifications established by Nano[metrics] in the applicable design specifications, OSI shall be Nano[metrics's] Exclusive Supplier of Small Spot Lenses for the commercial life of the products in which the Small Spot Lenses are deployed.

*Id.* § 3. Small spot lenses are defined elsewhere in the Agreement. *See id.* § 2.2. The Addendum further provides:

> In the event that OSI is not able to meet the product specifications, commercial product performance, or peak volumes to meet Nano[metrics's] commercial requirements, . . . Nano[metrics] may purchase Small Spot Lens [sic] from alternative suppliers. Notwithstanding the foregoing, Nano[metrics] shall give notice to OSI in the event that such commercial requirements have increased, and OSI shall have a reasonable period of time to ramp up to meet such commercial volumes.

*Id.* § 4.1.

OSI placed two further orders for specialized equipment that it claims it would not have made these orders absent the Agreement. Exh. I, at 8–16; *see* Piccirillo Dep. Tr. 206:19–207:1.

On December 28, 2013, Nanometrics modified its 25-micron purchase order to indicate a new delivery date of September 30, 2014. Exh. V. The modified purchase order required a total of 24 units of OSI's 25-micron lenses. *Id.* OSI delivered 11 lenses by September 30, 2014, and delivered the remaining 13 lenses by October 6, 2016. Exh. H, at 8. OSI claims that Nanometrics's then-Vice President of World Wide Operations, John Leon, instructed OSI to retain lenses past September 30, 2014. Exh. L ("OSI Leon Decl.") ¶ 14.

In 2016, OSI learned that Nanometrics had been purchasing 25-micron lenses from another optical lens manufacturer, Melles Griot. Piccirillo Dep. Tr. 309:1–14.

3

### B. Procedural Background

OSI filed suit against Nanometrics in August 2017 in New Hampshire state court. Compl., ECF No. 1-1, Case No. 18-cv-3276 (N.D. Cal.). The case was removed to the District Court of New Hampshire on September 18, 2017, and transferred to the Northern District of California on May 29, 2018. *See* ECF Nos. 1, 30, Case No. 18-cv-3276 (N.D. Cal.). In the meantime, a complaint filed by Nanometrics against OSI in California state court had been removed to this Court on January 19, 2018. *See* ECF No. 1. OSI answered that complaint on January 26, 2018. ECF No. 12. On June 14, 2018, OSI's action was consolidated with the Nanometrics action. ECF No. 39. After multiple rounds of motions to dismiss, OSI filed its Fourth Amended Complaint on July 7, 2020, and Nanometrics filed its answer on December 22, 2020. ECF Nos. 92, 108. The Fourth Amended Complaint brings claims for (1) breach of contract and (2) promissory estoppel. *See* 4AC. On March 1, 2023, Nanometrics moved for summary judgment on both of OSI's claims. *See generally* Mot. OSI filed an opposition. *See* Opp'n, ECF No. 141. The parties presented oral argument on June 29, 2023.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense. *See* Fed. R. Civ. P. advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015). As such, a court can, "when warranted, selectively fillet a claim or defense without dismissing it entirely." *Id.*

The moving party bears the burden of showing there is no material factual dispute, by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the

4

Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be denied if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Breach of Contract

OSI alleges that Nanometrics breached the Agreement by refusing to use the 25-micron lenses manufactured by OSI, failing to provide OSI with the opportunity to meet Nanometrics's commercial requirements, failing to provide OSI with the opportunity to quote a revised scope of work, and ultimately contracting with another supplier for the 25-micron lenses. 4AC ¶¶ 100–109. Under California law, a breach of contract claim requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Nanometrics argues that OSI cannot prove the first, second, and fourth elements. Mot. 16.

#### 1. Existence of an Enforceable Contract

The essential elements for the existence of a contract are (a) parties capable of contracting; (b) mutual consent; (c) a lawful object; and (d) consideration. *Oberstein v. Live Nation Ent., Inc.*, 60 F. 4th 505, 510 (9th Cir. 2023) (citing Cal. Civ. Code § 1550). If the purported consideration is merely an illusory promise that imposes no definite obligation to perform, the contract lacks mutuality of obligation. *Money Store Inv. Corp. v. S. Cal. Bank*, 98 Cal. App. 4th 722, 728 (2002) (citing *Kowal v. Day*, 20 Cal. App. 720, 724 (1971)). However, "[a]n agreement that is otherwise illusory may be enforced where the promisor has rendered at least part performance." *Id.*

Nanometrics contends that the Agreement is not an enforceable contract because it lacks consideration. Mot. 17–18. Nanometrics also appears to argue that any purported promise by OSI was in fact illusory because OSI's performance was optional and OSI did not render part

5

performance. Mot. 16–17.  OSI counters that its consideration was its definite obligation to perform under the Agreement, and that in any event it commenced performance.  Opp'n 15–17.

The Court previously held that the Agreement did not impose a definite obligation to perform on OSI.  Order Granting Mot. to Dismiss Third Am. Compl. ("MTD Order") 15–16, ECF No. 87.  The issue at hand is therefore whether there is a genuine dispute of fact as to whether OSI rendered part performance.  Nanometrics contends that OSI did not partially perform because it "failed to provide any conforming lenses in accordance with the agreed-upon schedule," and that OSI's delivery of the 25-micron lenses—for which Nanometrics paid in full—was performance of the 25-micron purchase order and cannot be performance of the Agreement.  Mot. 16–17 (citing Exhs. 17, 9, 35, 18).  The Court first notes that the Agreement by its terms amends the 25-micron purchase order.  Exh. M, at 1.  Further, OSI has provided evidence that it purchased specialized equipment for the lenses, *see* Exh. I; that the lenses did in fact meet the relevant specifications, *see* OSI Leon Decl.; that OSI continually worked to meet Nanometrics's changing specifications, *see* Exhs. R, S, T; and that OSI provided the number of lenses requested by the September 30, 2014 completion date, and retained the remainder as instructed by Nanometrics, *see* OSI Leon Decl.

Based on the evidence submitted by OSI—and particularly the existence of contradictory declarations from John Leon submitted by the two parties—the Court finds that there is a genuine dispute of fact as to whether OSI rendered part performance of the Agreement.

### 2. Performance or Excuse for Nonperformance

Nanometrics argues that even if the Agreement is an enforceable contract, OSI cannot prove performance of any of the three conditions for exclusivity, *i.e.*, delivery by the required date of completion; satisfaction of the design specifications; and satisfaction of the commercial product performance specifications.  Mot. 18–20.  OSI contends that delivery was timely; there was no fixed and final set of design specifications; and that Nanometrics never provided OSI with commercial specifications.  Opp'n 17–19.

#### a. Date of Completion

Nanometrics states that the date of completion at the time the Agreement was executed was December 10, 2013, and that the undisputed evidence shows that OSI failed to deliver any lenses

by that date. Mot. 19 (citing, *e.g.*, Nanometrics Leon Decl. ¶ 25). OSI has provided evidence that by mid- to late-November 2013, Nanometrics did not consider the December 10 deadline to be operative. Exh. C ("Barada Dep. Tr.") 177:23–179:7. And as noted above, there is evidence that Nanometrics updated the December 10, 2013 delivery date to September 30, 2014, and that OSI provided the requested number of lenses to Nanometrics by that date. OSI Leon Decl. ¶ 14. Accordingly, there is a genuine dispute of material fact as to whether OSI delivered lenses by the modified date of completion.

### b. Product Design Specifications

Nanometrics has introduced evidence that none of the lenses OSI delivered through 2015 met all of the product design specifications. Decl. of Daniel W. Thompson ("Thompson Decl.") ¶ 31. However, OSI has provided evidence that there was no final set of design requirements because the 25-micron lens project was a feasibility study to design a prototype. *See, e.g.*, Piccirillo Decl. ¶ 14 (describing "significant design and mechanical changes" required by Nanometrics in late December 2013); Exhs. R, S, & T (emails regarding same). In June 2014, Nanometrics's Vice President of Engineering informed OSI that it could relax one of the requirements of the specification. Exh. P, at 1. These documents indicate an issue of fact as to what the product designs were at various points in time, and whether OSI met those specifications.

### c. Commercial Product Specifications

The parties appear to agree that Nanometrics never provided OSI with commercial product specifications. *See* Mot. 20 ("[T]he parties never reached agreement on commercial terms."); Opp'n 18 ("Nanometrics . . . never provided OSI with the commercial product performance specifications."). As OSI notes, Nanometrics's failure to provide the commercial specifications to OSI does not permit Nanometrics to now claim that OSI failed to perform with respect to the commercial specifications. Cal. Civil Code § 1511(1); *see Unruh v. Smith*, 123 Cal. App. 2d 431, 437 (1954) ("Prevention of performance by the promisee is equivalent to performance by the promisor."); *see* Opp'n 18.

### 3. Damages

OSI claims that Nanometrics's breach of the Agreement entitles OSI to damages,

"including lost profits, interest, engineering and capital costs, attorney's fees and costs, and all other available damages." 4AC ¶ 109.  Nanometrics argues that OSI cannot establish lost profits because the Agreement only covered sales of Nanometrics products in which one of five defined "Small Spot Lenses" were deployed, and Nanometrics did not sell any such products.  Mot. 20–22.  Specifically, Nanometrics contends that none of OSI's 25-micron lenses fit any definition of a Small Spot Lens, and that the defined Small Spot Lenses do not contemplate 40-micron lenses.  *Id.* OSI has put forth evidence that Nanometrics referred to both OSI and competitor lenses as "small spot lenses," that Nanometrics changed the requisite small spot lens design without informing OSI, and that Nanometrics sold instruments deploying a small spot lens.  Exhs. GG, HH; Exh. J ("Leon Dep. Tr.") 89:9–18; Exh. Y ("Vedula Dep. Tr.") 31:2–31:7).  OSI has additionally provided evidence that its sole owner sets his pricing and profit margins.  Piccirillo Dep. Tr. 335:4–336:25.  Upon such a showing, the Court finds that there exists a genuine dispute of fact as to whether OSI has been damaged by Nanometrics's use of another company as a supplier for the optical lenses used in its products.

### B.     Promissory Estoppel

"The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages."  *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004).  At the outset, Nanometrics argues that one or the other of OSI's two claims must be dismissed because breach of contract and promissory estoppel are mutually exclusive.  Mot. 22.  A claim for promissory estoppel can only lie when an alleged promise lacks adequate consideration.  *See, e.g.*, *Raedeke v. Gibraltar Savings & Loan Ass'n*, 10 Cal. 3d 665, 672 (1974) ("[T]he doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise.").  Because the Court has found only that OSI has shown a genuinely disputed fact as to consideration—and not that there is in fact adequate consideration, *see* Mot. 23—there is no basis to dismiss one of the claims at this stage due to mutual exclusivity.

Nanometrics also argues that OSI cannot establish either a clear and unambiguous promise or reliance damages.  As noted previously, the Court has found the Agreement to contain a

conditional promise, *i.e.*, that OSI could become Nanometrics's exclusive supplier if it timely delivered small spot lenses that met the design specifications. MTD Order 18–19; *see Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12-CV-01393-EJD, 2012 WL 3835080, at *4 (N.D. Cal. Sept. 4, 2012) (finding plaintiff failed to plead promissory estoppel claim where claim was based on conditional promise). However, for the reasons described above, OSI has provided sufficient evidence to create a genuine dispute of fact as to whether it in fact met the condition for the promise, such that its reliance on the exclusivity provision in the Agreement was reasonable. *See Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1045–46 (2010) (finding evidence of satisfaction of condition for conditional promise sufficient to withstand summary adjudication of promissory estoppel claim).

With respect to reliance damages, Nanometrics argues that OSI could not have reasonably relied on the Agreement in making its capital expenditures for the specialized equipment because OSI told Nanometrics that the equipment costs were not necessary for the completion of the purchase order. Mot. 24 (citing, *e.g.*, Exh. 16). OSI has in turn provided evidence that it incurred the capital expenditures based on conversations with Nanometrics leading to the understanding that OSI would complete not only the purchase order but future orders for ongoing production. *See, e.g.*, Piccirillo Dep. Tr. 174:11–177:23; OSI Leon Decl. ¶¶ 6, 12. The Court finds upon this evidence that OSI has shown a genuine dispute of fact as to whether it reasonably relied on promises of exclusivity in incurring its capital expenditure costs.

## IV. ORDER

The Court has identified some disputed facts, but does not suggest by this order that these are the only factual contentions in dispute. Because there are genuine issues of material fact as to each challenged element of OSI's breach of contract and promissory estoppel claims, Nanometrics's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 3, 2023

_____
BETH LABSON FREEMAN
United States District Judge

9