UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOMETRICS, INCORPORATED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OPTICAL SOLUTIONS, INC., et al., <br><br> Defendants. | Case No. 18-cv-00417-BLF <br><br> **ORDER REGARDING NANOMETRICS, INC.'S MOTIONS IN LIMINE 1-5** <br><br> Re: ECF Nos. 162, 163, 164, 165, 166 |
| OPTICAL SOLUTIONS, INC., et al., <br><br> Cross-Plaintiffs, <br><br> v. <br><br> NANOMETRICS, INCORPORATED, et al., <br><br> Cross-Defendants. | |

On October 20, 2023, the Court held a pretrial conference in this action, during which it issued oral rulings on Plaintiff and Cross-Defendant Nanometrics, Inc.'s ("Nanometrics") motions *in limine*. The Court here expands upon those oral rulings.

**I.   NANOMETRICS'S MOTIONS *IN LIMINE***

Nanometrics filed five motions *in limine*. *See* ECF Nos. 162–66. Defendant and Cross-Plaintiff Optical Solutions, Inc. ("Optical") opposed all five motions. *See* ECF Nos. 178–82. The Court considers each motion *in limine* in turn.

**A.   Nanometrics's Motion *in Limine* No. 1 to Exclude Bradley Piccirillo from Testifying as an Expert Witness (ECF No. 162)**

In its first motion *in limine*, Nanometrics moves to exclude expert testimony from Bradley Piccirillo—Optical's founder, president, and sole owner—opining that (1) Optical was able to

1  design and manufacture 25-micron optical lenses that met Nanometrics's specifications; (2)
2  Optical could have designed and manufactured optical lenses that met the supposedly less
3  challenging technical specification that Nanometrics ultimately used for its 25-micron lenses; (3)
4  feasibility studies in general, and the specifications that Nanometrics provided to Optical in
5  particular, are not fixed or absolute specifications that Optical was required to meet; (4) prototype
6  optical lenses are not intended to be shared with third parties, and it was Nanometrics's standard
7  process not to share prototypes with customers until internal testing was complete; and (5) Optical
8  would have earned 80% profit margins on all optical lenses Optical would have built and sold to
9  Nanometrics.  *See* MIL 1, at 1–2, ECF No. 162.  Nanometrics argues that Mr. Piccirillo's expert
10 report does not disclose any methodology, testing, results, or damages calculations in support of
11 opinions 1, 2, and 5, and that he is not qualified to testify to opinions 3 and 4 as an industry norms
12 expert about the use of feasibility studies and prototype optical lenses because Nanometrics was
13 Optical's only optics customer in the semiconductor industry.  *See id.* at 2–5.  Nanometrics also
14 argues that Mr. Piccirillo should be excluded from testifying as an expert because he has a direct
15 financial interest in the outcome of the litigation.  *See id.* at 5.
16         Optical counters that Mr. Piccirillo's practical experience in the semiconductor industry
17 qualifies him as an expert, and that any disputes regarding his qualifications go to the weight of
18 his testimony, rather than its admissibility.  *See* Opp'n to MIL 1, at 2–3, ECF No. 178.
19         Federal Rule of Evidence 702 permits a witness to testify as an expert if "(a) the
20 [witness's] scientific, technical, or other specialized knowledge will help the trier of fact to
21 understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient
22 facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert
23 has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)–(d).
24 Further, an amended version of Rule 702 will go into effect on December 1, 2023—absent action
25 from Congress following the Supreme Court's provision of proposed amendments—under which a
26 party proffering an expert will have to demonstrate to the court that elements (a) through (d) are
27 more likely than not to be true, and Rule 702(d) will require "the expert's opinion [to] reflect[] a
28 reliable application of the principles and methods to the facts of the case."  *See, e.g.*, Kristen M.

2

Bush & Kayla M. Kuhn, *Proposed Amendments to Federal Rule of Evidence 702 and Their Impact on Expert Discovery*, American Bar Association, https://www.americanbar.org/groups/tort _trial_insurance_practice/ publications/the_brief/ 2022- 23/winter/proposed-amendments-federal-rule-evidence-702-and-their-impact-expert-discovery/ (June 14, 2023).

      As the Court noted during the pretrial conference, Mr. Piccirillo's expert report does not provide any methodology in support of his opinions. *See* Decl. of Ryan C. Stevens in Supp. of Nanometrics' Mots. *in Limine* Nos. 1–5 ("Stevens Decl."), Exh. 1 ("Piccirillo Report"), ECF No. 167-1. Nor can the Court credit Mr. Piccirillo's statement that he has a "unique ability to understand the science of optics." *Id.* at 1. Without a description of Mr. Piccirillo's methodology, the Court cannot determine whether his opinions are the "product of reliable principles and methods," *see* Fed. R. Evid. 702(c), or whether he "reliably applied the principles and methods to the facts of the case," *see id.* at 702(d). The amended version of Rule 702(d) requiring an opinion to "reflect a reliable application of the principles and methods" used by the witness—which would be in force by the time this case goes to trial on December 4, 2023—would apply with even greater force. Accordingly, Mr. Piccirillo is not entitled to the Court's imprimatur as a qualified expert regarding Optical's ability to manufacture lenses that would have met certain specifications (opinions 1 and 2) or the profit margin that Optical would have enjoyed had it continued to build and sell optical lenses to Nanometrics (opinion 5). *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("[These materials] either explain the methodology the experts followed to reach their conclusions nor point to any external source to validate that methodology . . . [and] that's not enough.").

      As for Mr. Piccirillo's assertions regarding his understanding of the semiconductor industry's treatment of feasibility studies and prototype optical lenses (opinions 3 and 4), the Court finds that Mr. Piccirillo's report does not put forward any factual basis for his conclusions. *See* Piccirillo Report 3–4. Specifically, although the report states that Mr. Piccirillo's "entire professional career has been related to optics design and manufacturing solutions," *see id.* at 1, it does not provide a basis for Mr. Piccirillo's understanding of the broader semiconductor industry. Accordingly, the Court cannot find under either the current or forthcoming version of Rule 702

3

that Optical has established a sufficient basis to qualify Mr. Piccirillo as an expert. *See Daubert*, 43 F.3d at 1316 ("Our task, then, is to analyze not what the experts say, but what basis they have for saying it.").

For these reasons, the Court will grant Nanometrics's motion *in limine* to exclude Mr. Piccirillo from offering expert testimony on the five opinions identified above. This decision does not preclude Optical from offering Mr. Piccirillo as a percipient witness testifying about much of the same information or as a lay witness offering an admissible opinion under Rule 701.

### B. Nanometrics's Motion *in Limine* No. 2 to Exclude Richard Trissel from Testifying as an Expert Witness (ECF No. 163)

In its second motion *in limine*, Nanometrics seeks to exclude expert testimony from Richard Trissel—an optical lens designer who designed the 25-micron lens at issue in this case—opining that (1) his 25-micron optical lens design met Nanometrics's requirements; (2) Optical's 25-micron lenses, as manufactured, met Nanometrics's feasibility study specifications based on Optical's existing test capabilities; (3) Optical would have been able to ship prototype lenses to Nanometrics sooner than it did, if Nanometrics had provided a "properly functioning lateral color bench"; (4) the feasibility study was "intended" to be used to generate final specifications; and (5) the prototype lenses were "intended for internal use only, and were not intended for use with third parties." *See* MIL 2, at 1, ECF No. 163 (quoting Stevens Decl., Exh. 5 ("Trissel Report"), at 1–3). Nanometrics argues that this testimony should be excluded because Mr. Trissel's report does not identify any methodology or analysis to support these opinions, and because Mr. Trissel was deposed and testified that he did not consider any documents in reaching the conclusions stated in his report. *See id.* at 1–2; *see also* Stevens Decl., Exh. 6 ("Trissel Dep."), at 11:6–8. Optical counters that Mr. Trissel's education and experience as an optical designer qualify him as an expert, and that his report explains the steps he took to design and test his 25-micron lens design. *See* Opp'n to MIL 2, at 1, ECF No. 179.

As stated at the pretrial conference, the Court reserves its decision on the admissibility of Mr. Trissel's opinion that his 25-micron optical lens design met Nanometrics's requirements (opinion 1) until it receives evidence on November 17, 2023, regarding the question of whether

4

1  Mr. Trissel can demonstrate that his opinion on the design demonstrates a reliable application of
2  methodology.
3     With regard to Mr. Trissel's opinion that Optical's prototype lenses met Nanometrics's
4  specifications based on Optical's existing test capabilities (opinion 2), *see* Trissel Report 3, the
5  Court notes that the opinion inherently admits that Mr. Trissel was not able to test whether
6  Optical's lenses fully met the required design specifications.  Nor does Mr. Trissel provide any
7  explanation of what tests he did in fact conduct.  *See generally* Trissel Report.  Because Mr.
8  Trissel has not explained how he arrived at his conclusion or presented any data supporting his
9  opinion, the Court will exclude this testimony.  *See Cabrera v. Cordis Corp.*, 134 F.3d 1418,
10 1420–21 (9th Cir. 1998) ("[T]he expert must explain precisely how [he] went about reaching [his]
11 conclusions and point to some objective source . . . to show that [he has] followed the scientific
12 method, as is practiced by (at least) a recognized minority of scientists in [his] field.") (alterations
13 in original) (citations omitted).
14    Similarly, Mr. Trissel's report provides no basis for his opinion that Optical would have
15 been able to ship prototype lenses to Nanometrics sooner than it did, if Nanometrics had provided
16 a "properly functioning lateral color bench" (opinion 3).  *See* Trissel Report 3.  Further, Mr.
17 Trissel testified at his deposition that he had never used a lateral color test bench prior to working
18 with the one provided by Nanometrics for the 25-micron lenses.  *See* Trissel Dep. 152:10–19.
19 Because Mr. Trissel has not provided a basis for his opinion on the functioning of Nanometrics's
20 lateral color bench, the Court will exclude his testimony regarding this opinion.  *See Cabrera*, 134
21 F.3d at 1420–21.
22    Lastly, Mr. Trissel's two opinions regarding Nanometrics's intent—*i.e.*, that the feasibility
23 study was "intended" to be used to generate final specifications, and the prototype lenses were
24 "intended for internal use only, and were not intended for use with third parties" (opinions 4–5)—
25 are based on pure speculation and are therefore not the proper subject of expert testimony.  *See*
26 *Daubert*, 43 F.3d at 1319 ("Indeed, no understandable scientific basis is stated.  Personal opinion,
27 not science, is testifying here.") (citation omitted).
28    For the foregoing reasons, the Court will grant Nanometrics's motion *in limine* to exclude

1   Mr. Trissel from testifying as an expert on the second through fifth challenged opinions, and it
2   will reserve its decision on the first challenged opinion until it has received evidence on Mr.
3   Trissel's reliable application of design principles.

        **C.    Nanometrics's Motion *in Limine* No. 3 to Exclude References to Nanometrics' Size or Merger, or Either Party's Financial Means or Ability to Fund Litigation or Damage Awards (ECF No. 164)**

6   In its third motion *in limine*, Nanometrics seeks to exclude references to its size, public
7   company status, market capitalization, corporate transactions, or revenue, or to the parties'
8   respective financing of litigation or ability to pay any damage award. *See* MIL 3, at 1, ECF No.
9   164. Nanometrics argues that such evidence is inadmissible under Federal Rules of Evidence 401,
10  402, and 403, and that such evidence would constitute an improper attempt to garner juror
11  sympathy based on a "David v. Goliath" argument unrelated to the merits of the action. *See id.* at
12  1. Optical responds that it agrees that no testimony or exhibits should be introduced that discuss
13  the parties' abilities to pay for litigation or any potential damages award; that it will refer to
14  Nanometrics as "Nanometrics" and will not refer to Nanometrics's merger or name change, but
15  should not be precluded from introducing an exhibit merely because it references Nanometrics's
16  current legal entity name; that it will designate select pages from public securities filings, rather
17  than seek to introduce the entirety of such filings; and that it would be "impossible to completely
18  avoid discussing the size disparity when providing basic background information to the jurors to
19  understand the case." *See* Opp'n to MIL 3, at 1, ECF No. 180.

20  Given Optical's response, the only remaining dispute addressed at the pretrial conference
21  concerned the admissibility of evidence relating to the size disparity between the parties. As the
22  Court stated at the conference, it will grant Nanometrics's motion *in limine*, including with respect
23  to evidence of the parties' size disparity. Any relevance of the difference in the parties' sizes is
24  substantially outweighed by the risk of unfair prejudice to Nanometrics of appearing as a
25  "Goliath" to Optical's "David." *See, e.g.*, *HTC Corp. v. Tech. Props. Ltd.*, No. 5:08-cv-00992,
26  2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) ("The court finds that the probative value of
27  evidence related to [defendant's] size, wealth, or overall revenues is substantially outweighed by
28  the risk of unfair prejudice, confusion of the issues and misleading the jury . . . ."). This decision

does not preclude Optical from introducing evidence regarding its own character as a small company, or regarding Nanometrics's treatment of Optical. What Optical may not do is engage in or invite a comparison of the two companies' sizes. The Court further clarifies that Optical is not precluded from seeking to introduce otherwise admissible testimony solely because it bears a different name for Nanometrics.

### D. Nanometrics's Motion *in Limine* No. 4 to Exclude Evidence and Argument Related to Intellectual Property Misappropriation or Breach of Confidentiality Agreements (ECF No. 165)

In its fourth motion *in limine*, Nanometrics seeks to exclude evidence and argument that it allegedly breached any confidentiality agreement or improperly used or distributed any proprietary or trade secret information. *See* MIL 4, at 1, ECF No. 165. Nanometrics argues that such evidence would be inadmissible under Federal Rules of Evidence 401, 402, and 403 because there are no claims for theft of trade secrets, misappropriation of intellectual property or trade secrets, or breach of any confidentiality agreements, and that any evidence or argument on these topics is irrelevant, inflammatory, and prejudicial to Nanometrics, and likely to confuse the jury. *See id.* Optical responds that it objects to the motion to the extent that Nanometrics is attempting to both introduce evidence suggesting Optical's fault in not sharing certain design information and then preclude Optical from offering evidence to explain its rationale. *See* Opp'n to MIL 4, at 2, ECF No. 181.

The Court will accordingly deny Nanometrics's motion *in limine* to the extent Optical seeks to introduce evidence related to Nanometrics's alleged breach of a confidentiality agreement or improper used or distribution of any proprietary or trade secret information in order to rebut evidence that Optical was at fault for failing to provide Nanometrics with design specifications. The Court will otherwise grant the motion *in limine*, such that Optical may not in its case-in-chief elicit testimony regarding Nanometrics's misappropriation of trade secrets of violation of a non-disclosure agreement, on the ground that any relevance of such testimony would be substantially outweighed by the danger of unfair prejudice to Nanometrics, jury confusion as to the claims at issue, and an undue delay in the presentation of the case. *See* Fed. R. Evid. 403.

7

### E. Nanometrics's Motion *in Limine* No. 5 to Exclude Evidence and Argument Related to Bradley Piccirillo's Purchase of Opticraft (ECF No. 166)

In its fifth and final motion *in limine*, Nanometrics seeks to exclude any evidence of Mr. Piccirillo's personal purchase of Opticraft, Inc. ("Opticraft") and any argument that Optical should be compensated for the purchase. *See* MIL5, at 1, ECF No. 166). Nanometrics argues that such evidence and argument should be excluded under Federal Rules of Evidence 401, 402, and 403 because Mr. Piccirillo personally—and not Optical—purchased Opticraft, so that any damages suffered by him personally are not recoverable by Optical and are not relevant to the issues to be decided by the jury. *See id.* Optical counters that Nanometrics seeks to "invade and supplant the equitable discretion of this Court in fashioning an appropriate equitable remedy on [Optical's] promissory estoppel claim," and that because Mr. Piccirillo is the sole owner of both Optical and Opticraft, the Court would have equitable discretion to order a remedy based on Mr. Piccirillo's purchase of Opticraft. *See* Opp'n to MIL 5, at 2, ECF No. 182.

The Court is not inclined to permit Optical—or Mr. Piccirillo—to both enjoy the benefits of the personal, rather than company, purchase of Opticraft and avoid the burdens of the decision. Given that Mr. Piccirillo's personal purchase of Opticraft is not relevant to the breach of contract claim that Optical will be trying to a jury, the Court finds that any relevance of the evidence of the purchase is substantially outweighed by the danger of unfair prejudice to Nanometrics and confusion of the jury as to the claims before it. *See* Fed. R. Evid. 403. Accordingly, the Court will grant Nanometrics's motion *in limine* to exclude evidence relating to Mr. Piccirillo's purchase of Opticraft and argument regarding Optical's right to compensation from Nanometrics for that purchase. Should any portion of Optical's promissory estoppel claim remain—*i.e.*, should any portion of Optical's claim for relief not have an adequate remedy at law—Optical may request to introduce such evidence to the Court.

## II. ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Nanometrics's Motion *in Limine* No. 1 to exclude Bradley Piccirillo from testifying as an expert witness is GRANTED. Mr. Piccirillo may not present expert testimony regarding:

8

a. Optical's ability to design and manufacture 25-micron optical lenses that met Nanometrics's specifications;

b. Optical's ability to design and manufacture optical lenses that met the allegedly less challenging technical specification that Nanometrics ultimately used for its 25-micron lenses;

c. Whether the semiconductor industry would consider feasibility studies, including the specifications that Nanometrics provided to Optical, are fixed or absolute specifications that Optical was required to meet;

d. Whether prototype optical lenses are not intended to be shared with third parties, and whether it was Nanometrics's standard process not to share prototypes with customers until internal testing was complete; and

e. Whether Optical would have earned 80% profit margins on all optical lenses Optical would have built and sold to Nanometrics.

2. Nanometrics's Motion *in Limine* No. 2 to exclude Richard Trissel from testifying as an expert witness is RESERVED IN PART as to Mr. Trissel's opinion on whether his design for Optical's 25-micron lenses met Nanometrics's design specifications, and otherwise GRANTED, such that Mr. Trissel may not provide expert testimony regarding:

a. Whether Optical's 25-micron lenses, as manufactured, met Nanometrics's feasibility study specifications based on Optical's existing test capabilities;

b. Whether Optical would have been able to ship prototype lenses to Nanometrics sooner than it did, if Nanometrics had provided a "properly functioning lateral color bench";

c. Whether the feasibility study was "intended" to be used to generate final specifications; and

d. Whether the prototype lenses were "intended for internal use only, and were not intended for use with third parties."

3. Nanometrics's Motion *in Limine* No. 3 to exclude references to Nanometrics's size,

9

public company status, market capitalization, corporate transactions, or revenue, or to the parties' respective financing of litigation or ability to pay any damage award, is GRANTED, such that Optical may introduce evidence regarding its own size and Nanometrics's treatment of Optical, but may not introduce evidence relating to any size disparity between the parties.

4. Nanometrics's Motion *in Limine* No. 4 to exclude evidence and argument related to intellectual property misappropriation or breach of confidentiality agreements is GRANTED IN PART and DENIED IN PART. Optical may not introduce such evidence in its case-in-chief, but may introduce evidence on these topics to rebut evidence that Optical was at fault in failing to provide design specifications to Nanometrics.

5. Nanometrics's Motion *in Limine* No. 5 to exclude evidence related to Mr. Piccirillo's purchase of Opticraft and argument that Optical is entitled to compensation for the purchase is GRANTED. Should Optical's promissory estoppel claim survive the presentation of this case to the jury, Optical may raise the issue of introducing such evidence to the Court.

**IT IS SO ORDERED.**

Dated: October 30, 2023

Beth Labson Freeman
United States District Judge